UNITED STATES OF AMERICA
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Criminal Action No. 5:22-cr-00032-BJB-LLK-2

**UNITED STATES OF AMERICA**                                                                           **PLAINTIFF**

**v.**

**TREON A. McELRATH**                                                                                         **DEFENDANT**

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Suppress, [Doc. 47], to which the United States responded in opposition, [Doc. 50]. On June 6, 2023, the undersigned Magistrate Judge held an evidentiary hearing on the motion, and the transcript is at Doc. 53. The United States filed a post-hearing brief, [Doc. 58], and Defendant filed a reply, [Doc. 65], and an amended reply, [Doc. 66]. The Court referred the matter to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. [Doc. 49].

For the reasons below, the undersigned RECOMMENDS that the Court DENY Defendant's Motion to Suppress [Doc. 47].

### Procedural History in this Court

In January 2023, Defendant filed a Motion to Suppress, [Doc. 34], to which the United States responded in opposition, [Doc. 37].

In May 2023, Defendant filed a Motion to Suppress, which is substantially the same as but replaced the one at Doc. 34. [Doc. 47]. The United States responded in opposition, [Doc. 50], reasserting its response at Doc. 37.

In June 2023, the undersigned held an evidentiary hearing on Defendant's motion to suppress. [Doc. 53].

In July 2023, the United States filed its post-hearing brief. [Doc. 58].

On August 23, 2023, Defendant filed his post-hearing reply brief. [Doc. 65].

1

On September 1, 2023, Defendant filed an amended post-hearing reply brief. [Doc. 66].

**Background Facts Giving Rise to Defendant's Motion to Suppress**

The background facts giving rise to Defendant's motion to suppress were established at the evidentiary hearing held in June 2023. The transcript of the hearing is at Doc. 53.

On May 5, 2022, at approximately 8:32 a.m., police arrested Defendant's co-defendant, Caryon Johnson, in or near Paducah, Kentucky. Tr. Suppression Hr'g [Doc. 53] at 122–23. Police searched Defendant's residence, and discovered methamphetamine, cocaine, and fentanyl. *Id.* Johnson took responsibility for the illegal drugs and cooperated with police, informing them that Defendant, who lives in Union City, Tennessee, supplied him with the drugs. *Id.* at 124–26.

On May 5, 2022, after his arrest, Johnson agreed to communicate with Defendant via cell phone while in police custody. In a recorded conversation, Johnson arranged a controlled purchase of three pounds of meth at $3,500 per pound later that day in Fulton, Kentucky. *Id.* at 127, 138–39. Johnson told police that "one of the vehicles [Defendant] had was a black Maserati SUV, that it was a possibility he would be driving that." *Id.* at 128.

Tennessee law enforcement corroborated that Defendant was driving a "black Maserati" and surveilled him as he left Union City heading toward Fulton. *Id.* at 128, 139.

In the meantime, Johnson continued to communicate with Defendant while in police custody, and the final agreement via text message was to meet at the Wine Cellar in Fulton. *Id.* at 139–40.

Police observed Defendant pull in the Wine Cellar parking lot, on May 5, 2022, at approximately 2:24 p.m., in a "black Maserati." *Id.* at 140. Police allowed Defendant to enter and exit the Wine Cellar, but when he was attempting to exit the parking lot, they converged on him, removed him from his vehicle, placed him in handcuffs, Mirandized him, and explained to him what was going on. *Id.* at 131.

A police dog, which had been brought on-site, did not alert to the presence of drugs. *Id.* at 134.

Police searched Defendant's vehicle and located what appeared to be the three pounds of meth that Johnson had requested on the phone in the front seat. *Id.* at 132.

Police obtained a warrant to search Defendant's residence in Union City which resulted in the seizure of 7 pounds of cocaine, ½ pound of meth, and $24,000 from suspected drug sales.

### Defendant's motion to suppress

Defendant's motion seeks to suppress two categories of evidence. First, Defendant seeks suppression of the incriminating evidence discovered in his vehicle on the theory that Johnson's tips to police did not give them probable cause to arrest him or search his vehicle. Def.'s Mot. Suppress [Doc. 47] at 1; Def.'s Mem. Supp. Mot. Suppress [Doc. 47-1] at 2-3.  In the alternative, Defendant argues that if there was probable cause, it was destroyed when the police dog did not alert.  Def.'s Am. Suppl. Br. Supp. Mot. Suppress [Doc. 66] at 8.  Defendant's first theory of suppression is unpersuasive for the reasons analyzed in detail in this Report.

Second, Defendant seeks suppression of the incriminating evidence discovered in his residence as fruit of the poisonous tree:

> Without going into great detail, it is undisputed that the search of [Defendant's] residence was based upon a warrant obtained due to the evidence located and seized in his automobile.  As such, any evidence which was found at his residence based upon that warrant is "fruit of the poisonous tree" and should also be suppressed.

Def.'s Mem. Supp. Mot. Suppress [Doc. 47-1] at 3.  Defendant's second theory of suppression is unpersuasive because it presupposes that police discovered the illegal items in his vehicle in violation of his Fourth Amendment rights and used these items (the poison) to obtain a search warrant (the fruit). Because police had probable cause to search Defendant's car there was no poison with which to poison the tree.

### The "automobile" exception to the search warrant requirement

The Fourth Amendment to the Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  *United States v.*

*Wilson*, No. 22-1587, 2023 WL 3886406, at *2 (6th Cir. June 8, 2023) (quoting U.S. CONST. amend IV). Generally, this right is secured by requiring that law enforcement officers obtain a warrant prior to conducting a search. *Id.* However, the Supreme Court has long recognized that some circumstances, including the search of an automobile and the inventory of seized assets, obviate the need for a warrant provided the search is otherwise reasonable. *Id.*

The "automobile exception" allows law enforcement to conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *Id.* (quoting *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)). Probable cause exists if, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause requires only "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Id.* (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)). Importantly, the automobile exception is not limited to cases where the car is immediately mobile or to items in plain view. *Id.* (citing *California v. Carney*, 471 U.S. 386, 391 (1985) and *United States v. Ross*, 456 U.S. 798, 817–22 (1982)). Rather, law enforcement may search a vehicle and the containers therein provided the officers have probable cause to believe that the object of the search may reasonably be found in the vehicle or containers. *Id.* (citing *Ross*, 456 U.S. at 824). *See also United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (The automobile exception allows law enforcement to search a vehicle "without a warrant if they have probable cause . . . that the vehicle contains evidence of a crime.").

## Findings of Fact and Conclusions of Law

By way of introduction and summary of the matters discussed in detail in this Report, the undersigned Magistrate Judge finds and concludes as follows:

1. On May 5, 2022, after his arrest, Johnson agreed to communicate with Defendant via cell phone while in police custody. In a recorded conversation, Johnson arranged a controlled purchase of three

pounds of meth at $3,500 per pound later that same day in Fulton, Kentucky. [Doc. 53 at 127, 138–39]. Johnson told police that "one of the vehicles [Defendant] had was a black Maserati SUV, that it was a possibility he would be driving that." *Id.* at 128. On May 5, 2022, per the police-monitored agreement between Defendant and Johnson, police observed Defendant pull in the parking lot of the Wine Cellar in Fulton, in a black Maserati. *Id.* at 140. Police allowed Defendant to enter and exit the Wine Cellar, but when he was attempting to exit the parking lot, they converged on him, removed him from his vehicle, placed him in handcuffs, Mirandized him, and explained to him what was going on. *Id.* at 131.

2. Probable cause exists to arrest an individual if "there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012). Probable cause based on tips from a known police informant is generally present if the informant arranges a controlled purchase and the target arrives at the planned place and time and in the vehicle predicted. *Id.* at 610. The Sixth Circuit deemed these elements to be the "key elements" of a known police informant's arranged purchase. *Id.*

3. A person has been "seized," or arrested, for Fourth Amendment purposes when "by means of physical force or a show of authority, his freedom of movement is restrained[]" or when a "reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980).

4. On May 5, 2022, when he was attempting to exit the parking lot of the Wine Cellar in Fulton, Kentucky, police had probable cause to believe Defendant was engaged in drug trafficking, and arrested him.

5. Police did not need an arrest warrant because Defendant was committing the drug trafficking offense in their presence. *See generally Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense

5

in his presence, he may, without violating the Fourth Amendment [without obtaining a warrant], arrest the offender.").

6. Police may "search a vehicle incident to a recent occupant's arrest . . . if [1] the arrestee is within reaching distance of the passenger compartment at the time of the search or [if] [2] it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009).

7. Police did not need a search warrant to search Defendant's vehicle incident to his arrest because it was reasonable to believe Defendant's vehicle contained evidence of drug trafficking.

8. A police dog, which had been brought on-site, did not alert to the presence of drugs.

9. The failure to alert did not destroy probable cause. The facts of this case are analogous to those in *United States v. Gill*, 685 F.3d 606 (6th Cir. 2012) and *United States v. Arnold*, 442 F. App'x 207 (6th Cir. 2011). In those cases, the Sixth Circuit held that there was probable cause to arrest the target at the time and place pre-arranged and driving the predicted vehicle, but there was no drug dog on site, indicating that lack of a positive drug dog alert is not always necessary to establish probable cause to search a vehicle.

**Caselaw Dictates that This Court Must Deny Defendant's Motion to Suppress.**

The facts of the present case are like those in *United States v. Gill*, 685 F.3d 606 (6th Cir. 2012)— a case not cited by the parties. In *Gill*, William Holmes agreed to become a confidential informant after being arrested for the sale of narcotics. *Id.* at 608. Holmes told police Rashawn Gill had sold him the drugs. *Id.* In the presence of police officers, Holmes called Gill, who agreed to sell five ounces of cocaine to Holmes at a particular location on Vine Street in Cincinnati. *Id.* Holmes told police that Gill would be driving a green Acura. *Id.* True to Holmes's prediction, Gill arrived at the specified location on Vine Street in a green Acura. *Id.* Holmes was arrested, and a search of his vehicle revealed what appeared to be the

6

five ounces of cocaine Holmes had requested on the phone. *Id.* The Sixth Circuit held that police had probable cause to arrest Gill and search his vehicle incident to arrest. *Id.* at 611.

The salient facts of the present case are practically identical: Johnson agreed to become a confidential informant after being arrested for possession of narcotics. Johnson told police Defendant had sold him the drugs. In the presence of police officers, Johnson communicated with Defendant, who agreed to sell him three pounds of meth at the Wine Cellar in Fulton, Kentucky. Johnson told police that Defendant would be driving a Maserati SUV. [Doc. 53 at 128]. True to Johnson's prediction, Defendant arrived at the Wine Cellar in a Maserati SUV. Defendant was arrested, and a search of his vehicle revealed what appeared to be the three pounds of meth Johnson had requested on the phone. As in *Gill*, police had probable cause to arrest Defendant and search his vehicle incident to arrest.

*Gill* is distinguishable for two reasons, but neither changes the outcome in this case.

First, *Gill* is distinguishable because the arrest and search incident to arrest in *Gill* occurred prior to the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009)—at a time when the "law in this Circuit . . . allowed police to search a vehicle incident to a suspect's arrest even when the suspect no longer occupied the vehicle." *Gill*, 685 F.3d at 610. *Gill* did not address whether the search would have violated *Gant*.

The search in the present case did not violate *Gant* because *Gant* identified two types of acceptable searches incident to arrest. Specifically, *Gant* held that "[p]olice may search a vehicle incident to a recent occupant's arrest . . . if [1] the arrestee is within reaching distance of the passenger compartment at the time of the search or [if] [2] it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. In the present case, the arrestee (Defendant) was not within reaching distance of the passenger compartment at the time of the search. However, police reasonably believed the vehicle contained evidence of the offense of arrest (i.e., drug trafficking).

7

Second, *Gill* is distinguishable because Gill initially ran from police. But there is no indication that Gill's initial flight was necessary to the Sixth Circuit's conclusion that probable cause existed for Gill's arrest. On the contrary, *Gill* explained that the following was sufficient for probable cause purposes:

> Here, the police corroborated key elements of Holmes's tip: the color and make of the car Gill was driving and the location of the arranged rug sale. The police also heard Holmes's end of the phone conversation in which Holmes arranged to meet Gill for a drug deal, and debriefed Holmes immediately following the call to ascertain what Gill had said. For these reasons, probable cause to arrest Gill existed at the time of his arrest.

*Id.* at 610.

The facts of the present case are also like those in *United States v. Arnold*, 442 F. App'x 207 (6th Cir. 2011)—a case cited by Defendant in his pre-hearing brief, [Doc. 47-1], and by the United States in its post-hearing brief, [Doc. 58]. In *Arnold*, an anonymous tipster contacted authorities with a tip that Jamail Arnold was selling cocaine out of the trunk of his burgundy Monte Carlo at the Sunoco station in Jackson, Michigan. 442 F. App'x at 208. The anonymous tipster later became a known confidential police informant and agreed to arrange a controlled purchase. *Id.* The anonymous tipster turned confidential informant called a number saved as "Jamail" in her cell phone and put the call on speaker so law enforcement could hear the conversation. *Id.* She told Arnold that she needed to "get hooked up" (with drugs) because friends were coming to town. *Id.* at 208–09. Arnold agreed to meet her near Union and Fourth Streets. *Id.* at 209. Police spotted Arnold driving in the direction of the proposed drug deal and pulled him over. *Id.* Search of the trunk resulted in discovery of what appeared to be some of the cocaine Arnold was allegedly selling. *Id.*

In *Arnold*, the Sixth Circuit affirmed the district court's denial of Arnold's motion to suppress, holding that "police could point to a variety of specific facts to establish a fair probability that Arnold's trunk contained contraband: the confidential informant's tips and corroboration thereof, the observation of people surrounding Arnold's open trunk, the informant's arrangement of a controlled buy over the phone, and Arnold's drive to the proposed drug deal location." *Id.* at 210–11.

*Arnold* is distinguishable because, before arranging the controlled purchase, the confidential informant had provided an anonymous, corroborated tip to police. Specifically, police were tipped that Arnold was selling drugs out of the trunk of his car, and police observed people standing around the trunk. But there is no indication that this observation was necessary to establish the fair probability needed for probable cause.

Finally, the facts of the present case are like those in *United States v. Washington*, No. 21-5745, 2022 WL 1224553 (6th Cir. Apr. 26, 2022)—a case in this Circuit but not cited by the parties. In *Washington*, Jerod Belcher agreed to cooperate after being arrested during a controlled drug purchase. *Id.* at *1. Belcher told police that later that night Washington was supposed to sell him a pound of meth in Room 202 at the Super 8 Motel in Central City, Kentucky, and that Washington would be driving a black BMW with Indiana license plates. *Id.* True to Belcher's prediction, Washington arrived at the time and place and in the vehicle indicated. *Id.* Police arrested Washington after he knocked on the door to Room 202. *Id.* The Sixth Circuit held that there was probable cause for the arrest and search of Washington's vehicle. *Id.* at *2–3.

*Washington* is distinguishable both because the arrest occurred after Washington had walked away from his vehicle (and was standing at the door to Room 202) and, because when police found no drugs on his person, a police dog alerted to the presence of drugs in Washington's vehicle. But there is no indication that probable cause would have been lacking to arrest Washington immediately after he exited his vehicle or that probable cause would have been destroyed if the police dog had not alerted. On the contrary, *Washington* explained that "officers had probable cause to search Washington's vehicle[]" because they "knew Washington was coming to the motel in a black BMW with Indiana plates for the purpose of selling methamphetamine to Belcher . . . [they] observed the vehicle as it arrived." This Court described these as the "key elements" of an informant's tip. *United States v. Washington*, No. 5:19-CR-61-TBR, 2020 WL 7389745, at *5 (W.D. Ky. Dec. 16, 2020) (quoting *United States v. Gill*, 685 F.3d 606, 610

9

(6th Cir. 2012)). This Court found the police dog alert to be "additional" evidence that "further supports" a finding of probable cause. *Id.* at *6.

*United States v. Gill*, 685 F.3d 606 (6th Cir. 2012), *United States v. Arnold*, 442 F. App'x 207 (6th Cir. 2011), and *United States v. Washington*, 2022 WL 1224553 (6th Cir. Apr. 26, 2022) dictate that this Court must deny Defendant's motion to suppress.

### Probable Cause is not Dependent on Whether Defendant's Maserati is Black or Blue.

In his post-hearing amended reply brief [Doc. 66], Defendant makes four principal arguments. For the reasons below, none are persuasive.

First, Defendant argues for the first time that Johnson told police that the Maserati Defendant would be driving is blue (not black). [Doc. 66]. Johnson did not testify at the evidentiary hearing. *See generally,* [Doc. 53]. Before Defendant's Amended Supplemental Brief in Support of His Motion to Suppress, [Doc. 66], Defendant made no mention of driving anything other than a "black" Maserati—not in Defendant's Memorandum in Support of Motion to Suppress, not at the evidentiary hearing, and not in Defendant's initial post-hearing brief [Doc. 47-1, 56, 65]. As recounted above, the testimony at the evidentiary hearing was that Johnson told police that the Maserati was "black," [Doc. 53 at 128], Tennessee authorities surveilled him in a "black" Maserati, [Doc. 53 at 139], and he was seen pulling into the liquor store in a "black" Maserati, [Doc. 53 at 140].

To the extent there is a legitimate evidentiary basis for asserting (at this late date) that the Maserati was not black but blue, this Report observes two facts. First, Maserati brand cars are not common in Western Kentucky. Second, dark blue/navy and black are commonly confused colors. Given the informant's statement that the Defendant would be driving a black Maserati, the police had "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion[,]" that even a blue Maserati at the time and place of a pre-arranged drug deal contained evidence of a crime. *United States v. Wilson*, 2023 WL 3886406, at *2. The "key elements" of the "color and make of the car

10

… and the location of the arranged drug sale," *United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012), were adequately satisfied in this case. In other words, a statement that a target will be driving a black or blue Maserati in Western Kentucky gives probable cause to stop the target driving a Maserati (whether black or blue).

### Defendant was under arrest when the meth was found inside his vehicle.

Second, Defendant insists that he "was **not** arrested until after the methamphetamine [was] found inside the vehicle." Def.'s Am. Suppl. Br. Supp. Mot. Suppress, [Doc. 66] at 204 (emphasis original).

As detailed above, police allowed Defendant to enter and exit the Wine Cellar, but when he was attempting to exit the parking lot, they converged on him, removed him from his vehicle, placed him in handcuffs, Mirandized him, and explained to him what was going on. Tr. Suppression Hr'g [Doc. 53] at 131. A police dog, which had been brought on-site, did not alert to the presence of drugs. But police searched Defendant's vehicle anyway, which resulted in discovery of approximately three pounds of meth. *Id.* at 132.

Admittedly, Defendant may not have been formally under arrest until after police had confirmed that the illegal drugs were present were, in fact, present. Further, it is possible that, if no drugs had been found, police would have allowed Defendant to go on about his business. But, before police searched his vehicle to see if it contained illegal drugs, he had been removed from the vehicle by force and handcuffed, and he was not free to leave. *See generally United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (A person has been "seized," or arrested, for Fourth Amendment purposes when "by means of physical force or a show of authority, his freedom of movement is restrained" or when a "reasonable person would have believed that he was not free to leave."). At that moment, Defendant was legally under arrest.

### There was Sufficient Corroboration of Johnson's Tips.

Third, Defendant argues that there was insufficient corroboration of the details of Johnson's tips. Def.'s Am. Suppl. Br. Supp. Mot. Suppress [Doc. 66] at 205. Defendant attempts to fault police for not

11

corroborating "several pieces of information given to law enforcement by Johnson[]" such as Johnson's allegation he and Defendant met each other in jail, and for not obtaining Defendant's operator's license picture. *Id.* at 206.

In *United States v. Cherry*, 920 F.3d 1126 (7th Cir. 2019), Cherry made a similar argument of insufficient corroboration of details. The Seventh Circuit rejected the argument because the level of corroboration Cherry was insisting upon was appropriate only in the case of an anonymous tipster:

> Anonymous tips, of course, require more corroboration than those where the honesty, motivation, and reliability of the informant can be assessed. [*Illinois v. Gates*, 462 U.S. 213, 244-46 (1983)]; *Adams v. Williams*, 407 U.S. 143, 147 . . . (1972) ("Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized."). . . . In this case, the informant did not have a long (or any) history of cooperating with law enforcement, and had not been known to them for long, but he was not an anonymous tipster.

*Id.* at 1134.

In his pre-hearing brief, [Doc. 47-1], Defendant relies on *United States v. Arnold*, 442 F. App'x 207 (6th Cir. 2011), in support of his argument of lack of sufficient corroboration. As detailed above, Arnold's informant was first an anonymous tipster and only later became a known confidential police informant. *Id.* at 208. Authorities were able to corroborate some tips that were given while the tipster was still anonymous, including observation of people standing around Arnold's open trunk, which was consistent with the allegation of his selling cocaine out of the trunk. *Id.* The Sixth Circuit did not forego including this corroboration of an anonymous tip in the list of items supporting its conclusion of probable cause. *Id.* at 210–11. But, to the extent *Arnold* suggests a need for corroboration going beyond the "key elements" of the "color and make of the car … and the location of the arranged drug sale," *United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012), it is either an artifact of the fact that the tipster was first anonymous or it is superseded by *Gill*, which the Sixth Circuit decided the year after *Arnold*. By contrast, Johnson was never an anonymous informant; he was an arrestee with legitimate reasons to cooperate truthfully with law enforcement.

**The Fact that the Police Dog Did Not Alert Did Not Destroy Probable Cause.**

Fourth, Defendant argues that the fact that the police dog did not alert destroyed any probable cause established by Johnson's tips. Def.'s Am. Suppl. Br. Supp. Mot. Suppress [Doc. 66] at 209.

This Report does not disagree with Defendant that "any belief that probable cause did exist should have been immediately diminished when the K9 failed to hit on the vehicle." *Id.* at 205. But while diminished, probable cause to arrest Defendant and search his vehicle was not destroyed.

Probable cause exists to arrest an individual if "there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012) (quoting *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998)). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Washington*, No. 5:19-CR-61-TBR, 2020 WL 7389745, at *3 (W.D. Ky. Dec. 16, 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

Defendant offers no persuasive reason why the facts of this case should be placed outside the general rule that a dog's failure to alert does not by itself destroy probable cause:

> Precedent … generally establishes that a dog's failure to alert does not by itself destroy probable cause. Illustrative of the cases is then-Judge Breyer's opinion in *United States v. Jodoin*, 672 F.2d 232 (1st Cir. 1982), which holds that a "dog's failure to react does not ... destroy the 'probable cause' that would otherwise exist. It is just another element to be considered." *Id.* at 236.

*United States v. Davis*, 430 F.3d 345, 365-66 (6th Cir. 2005). In contrast, a dog's failure to alert typically destroys mere reasonable suspicion. *Id.* at 356 ("Once the drug-sniffing dog was brought to the scene and failed to alert positive to the presence of narcotics in the vehicle, the officers' suspicions … were dispelled."). As discussed in connection with Defendant's second argument, Defendant was under arrest when the meth was found inside his vehicle. It was not merely a stop based on reasonable suspicion.

The detectives in charge of the controlled purchase in this case (McCracken County Sheriff Detectives Riddle and Clark) and the police dog's handler (Fulton County Sheriff Deputy Matheny) testified

regarding the dog's failure to alert. Tr. Suppression Hr'g [Doc. 53]. Riddle and Clark testified to the effect that they did not believe they needed a police dog to establish probable cause, but they brought one anyway, allegedly to allow the dog and its handler to get some "additional training." *Id.* at 131, 145. Matheny testified that he noticed that the dog "wasn't doing what he was supposed to as far as conducting a search." *Id.* at 132.

Defendant argues that "in reality, [Riddle and Clark] knew [they] needed more to lawfully search [his] vehicle and hoped Matheny's K9 would provide it." Def.'s Am. Suppl. Br. Supp. Mot. Suppress [Doc. 66] at 207. Defendant further argues that the story of the dog needing "additional training" was disingenuous or pretextual: "If Matheny's K9 needed training, Matheny would have called Riddle or Clark to ask about using their operation as training exercise. Based on the testimony, Matheny did not know his K9 was being trained. Matheny and his K9 were asked to work." *Id.* at 199.

This Report has already concluded that Riddle and Clark did not need a positive police dog alert to establish probable cause. It is immaterial whether Riddle and Clark believed they needed a positive alert or whether their "additional training" story was fully credible.

Defendant argues that "[i]f probable cause to search [his] vehicle existed upon his arrival at the liquor store, the highly-trained and experienced members of law enforcement assisting in this investigation would not have taken time out of an ever-evolving, fluid situation to give a dog some training." Def.'s Am. Suppl. Br. Supp. Mot. Suppress [Doc. 66] at 208. This Report finds that it more likely that Riddle and Clark understood that probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Rather than relying on their belief that a positive police dog alert was unnecessary to establish probable cause—which ultimately would require a court decision—they decided, out of an abundance of caution, to bring in a police dog. This would not have been improper.

14

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the Court **DENY** Defendant's Motion to Suppress [Doc. 47].

September 15, 2023

Lanny King, Magistrate Judge
United States District Court

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(1), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

September 15, 2023

Lanny King, Magistrate Judge
United States District Court