UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                                                       NO. 5:22-cr-32-BJB

TREON A. MCELRATH

### MEMORANDUM OPINION & ORDER

Magistrate Judge King recommended that the Court deny Treon McElrath's motion to suppress evidence found in his Maserati SUV and his home. Report & Recommendation (DN 67) at 1. No warrant authorized the automobile search, and the warrant that authorized the home search was based on evidence (three pounds of methamphetamine) seized from the car. Yet Judge King concluded that neither search violated McElrath's Fourth Amendment rights or warranted suppression. First, Judge King determined that the SUV search was constitutional based on exceptions to the warrant requirement for searches of automobiles and searches incident to arrest—either of which justified the officers' seizure of the drugs. *Id.* at 3, 5–6. Second, Judge King decided that because the Maserati search was constitutional, so was the search of McElrath's home. *Id.* at 3.

McElrath objects on the grounds that the officers lacked probable cause to search the SUV, obtained an invalid warrant based on the "fruit of the poisonous tree" seized from the car, and therefore lacked a bona fide warrant to seize evidence from the house. Objections (DN 69) at 3. After reviewing McElrath's objections and Judge King's Report and Recommendation de novo, 28 U.S.C. § 636(b)(1), the Court agrees that the exceptions identified by Judge King each independently justified the searches at issue.

*

Judge King held an evidentiary hearing which revealed that McElrath's arrest was the culmination of a sting operation orchestrated by the DEA and the McCracken County Sheriff's Office. Detective Jesse Riddle and other officers arrested co-defendant Caryon Johnson for drug trafficking in May 2022. Official Transcript (DN 53) at 4. Johnson told Riddle that Treon McElrath supplied him with methamphetamine and agreed to contact McElrath while in custody. *Id.* at 5–6. Riddle knew, from other active investigations, that law enforcement suspected McElrath of "moving large quantities of illegal drugs" in Kentucky and Tennessee. *Id.* at 6–7. Johnson called McElrath to set up a drug deal, and the two arranged the logistical details in a series of text messages. *Id.* at 8. McElrath agreed to sell Johnson three pounds of methamphetamine for $3,500 per pound and directed Johnson to meet him later that day at the Wine Cellar, a Fulton liquor store. *Id.* at

1

8, 11. Johnson told Riddle that "it was a possibility that [McElrath] would be driving" a "black Maserati SUV" to the drug deal. *Id.* at 9.[1] McElrath owned a car lot and a home in Union City, Tennessee. *Id.* So Riddle asked Tennessee's 27th Judicial Drug Task Force, which was also investigating McElrath, to surveil him south of the state line. *Id.* The Tennessee Task Force officers confirmed that McElrath was driving a black Maserati SUV to Fulton. *Id.* at 9–10. Riddle and other Kentucky officers then traveled to the Wine Cellar while Johnson remained at the Sheriff's Office in Paducah. *Id.* at 11. Once McElrath arrived at the Wine Cellar driving a black Maserati SUV, Riddle and the other officers detained him.

After the officers handcuffed McElrath, but before they searched his SUV, they deployed a drug sniffing dog. Objections at 2. The dog failed to alert but officers searched the SUV anyway. DN 53 at 13. Inside they recovered three pounds of methamphetamine. *Id.* at 11–13. Then they arrested McElrath. A grand jury soon indicted him possessing and conspiring to possess methamphetamine with the intent to distribute it. Indictment (DN 12). This motion to suppress (DN 47) followed.[2]

\* \*

The U.S. Constitution's Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Typically, a reasonable search is one justified by a search warrant: "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Two are relevant here.

**1. The automobile exception.** "Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). The Supreme Court has identified two rationales for this exception: the "ready mobility" of vehicles and the "lesser expectation of privacy" in

---

[1] McElrath's objection contends that law enforcement didn't know he would be driving the Maserati because "Johnson ha[d] texted him and asked him to send a 'runner.'" Objections at 2. As the Government noted in its post-hearing brief, however, members of the 27th Judicial Drug Task Force "surveill[ed] *McElrath* … heading towards Fulton, Kentucky (the site of the arranged deal set up by law enforcement)." DN 58 at 2 (emphasis added); *see also* Testimony of Detective Riddle, DN 53 at 9–10 (Tennessee Task Force officers had "actually seen him … head in the direction of … Fulton to meet our cooperator").

[2] McElrath's court-appointed lawyer filed a motion to suppress in January 2023. DN 34. The next month McElrath obtained private counsel, *see* DN 39, who filed a new motion to suppress in May 2023, DN 47. The new motion to suppress is "substantially the same as" the original. R&R at 1.

2

them due to the "pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 390–92 (1985).

"Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation marks omitted). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quotation marks omitted). That probability "depends on the totality of the circumstances." *Id.* "Whether a set of facts meets this standard turns on a practical assessment commonly made by reasonable and prudent people, not a technical assessment reserved for legal technicians." *United States v. Baker*, 976 F.3d 636, 645 (6th Cir. 2021) (quotation marks omitted).

Officers had probable cause to believe that McElrath had methamphetamine in his car. That authorized them to search his car without a warrant.

"[R]easonable and prudent people" would surely find "a substantial chance of criminal activity" when McElrath arrived at the Wine Cellar. *Baker*, 976 F.3d at 945. After all, a man recently arrested for drug trafficking arranged for McElrath to drive to that exact spot in order to sell a large quantity of drugs. Riddle also knew that McElrath was a suspected drug dealer and drove a Maserati. And Riddle saw this transpire just as Johnson told him it would: McElrath arrived at the Wine Cellar in his black SUV. Because probable cause only requires a "probability" of criminal activity, "not an actual showing of such activity," nothing more was required. *Baker*, 976 F.3d at 645.

The Sixth Circuit has affirmed findings of probable cause on nearly identical facts. In *United States v. Gill*, for example, the Court of Appeals held that probable cause to arrest Gill for drug trafficking existed when "Holmes arranged by phone to buy from Gill five ounces of cocaine at a location on Vine Street," "Gill told Holmes that Gill would be driving a green Acura," and "Gill arrived at the location, driving a green Acura." 685 F.3d 606, 609–10 (6th Cir. 2012).[3] So too in *United States v. Strickland*: "Armed with two taped conversations of known drug dealers who identified Strickland as a potential source of cocaine, an informant's account of a conversation in which Strickland agreed to meet Haggard at a certain time and place to sell him cocaine, and the independent observation of Strickland's arrival at the

---

[3] McElrath argues that *Gill* is distinguishable because "Gill fled when approached by officers, dropped his keys to his car mid-flight and – after being caught and found with marijuana in his waistband in-close-proximity to a firearm – was arrested." Objections at 4. But these facts were irrelevant to the Sixth Circuit's determination that police had probable cause to arrest Gill for drug trafficking. The Court of Appeals expressly agreed with the Government "that the police had probable cause to arrest Gill and search the Acura prior to, and independent of, their discovery of the marijuana on Gill's person and seizure of the gun near where Gill was stopped." *Gill*, 685 F.3d at 609 ("Because we conclude that probable cause existed to arrest Gill when he arrived … we do not reach Gill's other arguments concerning the *Terry* stop and the seized handgun").

3

[time and place,]" officers had probable cause to arrest Strickland. 144 F.3d 412, 417 (6th Cir. 1998).

True, these cases held that there was probable cause to *arrest* rather than search. The automobile exception allows a search based on "probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 347. The "existence of probable cause to arrest will not necessarily establish probable cause to search," given that the two inquiries "focus on different things." *Baker*, 976 F.3d at 646 (considering probable cause to support an arrest warrant). The former examines the "belief of guilt specific to [a] subject," while the latter "ask[s] whether a nexus exists between a crime and the place to be searched." *Id.* at 645–46 (quotation marks omitted). But "the same prudent person standard governs both contexts." *Id.* at 645 (quotation marks omitted). And here, as in other similar circumstances, the distinction makes no difference. *See, e.g., Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996) ("Here, both findings must ultimately stand or fall on the same evidence. If it was reasonable to obtain a search warrant, it had to be equally reasonable to obtain the arrest warrant."); *Mendenhall v. Riser*, 213 F.3d 226, 235 n.18 (5th Cir. 2000) ("In this case, the requisite probable cause [to search and arrest] appears to be coterminous."). The same facts that gave Riddle and the other officers probable cause to believe McElrath was guilty of drug trafficking—the sting, the source, the corroborated details, the prior investigation—likewise gave them probable cause to believe evidence of that drug trafficking would be found in the automobile McElrath was driving to the meet. Law enforcement could search McElrath's SUV without having to obtain a warrant.

McElrath's two counterarguments fail. First, he argues that "the automobile exception to the warrant requirement is not applicable" because "[t]he Magistrate Judge erred in finding that the defendant was under arrest prior to law enforcement searching his vehicle." Objections at 1 (internal quotation marks and emphasis omitted). But the automobile exception does not require an arrest; it simply requires "probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 34. So long as officers had probable cause to believe methamphetamine was in McElrath's SUV, they could search the car regardless of whether they arrested McElrath.[4]

McElrath's second argument in favor of suppression focuses on the drug-sniffing dog. Its failure to alert, he claims, demonstrates that Riddle and the other officers did not actually believe that drugs were probably in the car. Objections at 3. But probable cause is an objective inquiry. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). Whether the officers subjectively thought they had probable cause is irrelevant. *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) ("Just as a subjective belief by the arresting officer would not establish probable cause where

---

[4] That said, the automobile exception still applies even if a subject has been arrested. *See United States v. Washington*, No. 21-5745, 2022 WL 1224553, at *3 (6th Cir. April 6, 2022). The exception turns on the presence or absence of probable cause, not an arrest.

none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists."). And as discussed above, they had ample cause to believe that evidence existed in the car independent of the dog sniff.

Before Judge King, McElrath made a third, related argument: the dog's failure to alert destroyed probable cause. *See* R&R at 13. He hasn't raised the argument in his objection to the R&R, so he has forfeited it. *Kensu v. Haigh*, 87 F.3d 172, 176 (6th Cir. 1996).

Even if he had pressed the point, it would not alter the probable-cause ruling. "The failure of a drug dog to alert may not always dispel probable cause." *Harris v. Klare*, 902 F.3d 630, 637 (6th Cir. 2018). Instead, its effect on probable cause (or reasonable suspicion) depends on the surrounding facts. *Compare United States v. Perez*, 440 F.3d 363, 373 (6th Cir. 2018) (failure to alert did not destroy reasonable suspicion) *and United States v. Colbert*, 525 F. App'x 364, 368 (6th Cir. 2013) (same) *with United States v. Davis*, 430 F.3d 345, 356 (6th Cir. 2005) (failure to alert did destroy reasonable suspicion). Here, two officers testified that the dog did not properly conduct a free-air sniff. According to Detective Riddle, "it was apparent that the dog wasn't doing what he was supposed to do as far as conducting a search and that type thing." DN 53 at 12. And Officer Matheny, the dog's handler, said that he "couldn't get [the dog] to concentrate or work to run on the vehicle" and that the free-air sniff "was flawed because the dog wasn't doing what he was supposed to do at the time." *Id.* at 33. Given this testimony, and the other facts strongly supporting the officers' suspicion of McElrath's Maserati, probable cause existed regardless of the dog's failure to alert.

**2. Search incident to arrest.** Judge King also relied on this second exception to the warrant requirement, which would independently justify the search. R&R at 6. "Police may search a vehicle incident to a recent occupant's arrest … if … it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. As with the automobile exception, that McElrath was not yet under arrest when officers searched the SUV doesn't matter. "[A] formal custodial arrest need not precede the search as long as the formal arrest follows quickly on the heels of the challenged search and the fruits of that search are not necessary to sustain probable cause to arrest." *United States v. McCraney*, 674 F.3d 614, 619 (6th Cir. 2012) (quotation marks omitted).

That is what happened here—largely for the reasons already explained in connection with the automobile exception. McElrath was arrested for trafficking methamphetamine after he showed up to the Wine Cellar to sell Johnson the three pounds of methamphetamine he promised during their phone and text-message conversation. It was "reasonable to believe the vehicle contain[ed]" evidence of drug trafficking, i.e., the methamphetamine he agreed to sell, for the same reasons officers had probable cause. *Gant*, 556 U.S. at 346.[5]

---

[5] As Judge King's application of the automobile and search-incident exceptions demonstrates, their doctrinal Venn diagram overlaps substantially. Indeed, the D.C. Circuit

5

**3. Fruit of the Poisonous Tree.** Lastly, McElrath argues that the evidence subsequently seized from his home should be suppressed as fruit of the poisonous tree since the search warrant for his home was obtained using the methamphetamine recovered from the SUV. Objections at 3. "In a nutshell, this doctrine counsels for the exclusion of evidence derived from information or items obtained in an illegal search." *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021) (quotation marks and alteration omitted). But this argument only works if the search of the SUV violated the Fourth Amendment. It did not.

****

Because law enforcement had probable cause to believe that McElrath was engaged in drug trafficking when he arrived at the Wine Cellar in his SUV, and that evidence of that trafficking would be found in his car, they could search his SUV either just before or after they arrested him for trafficking. So the Court overrules McElrath's objections (DN 69), adopts Judge King's report and recommendation (DN 67), and denies McElrath's motion to suppress (DN 47).

Benjamin Beaton, District Judge
United States District Court

December 15, 2023

---

has inferred from this apparent similarity that courts may be demanding too much under *Gant*: its "reasonable to believe standard probably is akin to the reasonable suspicion standard required to justify a *Terry* search," for otherwise this exception "would merely duplicate the automobile exception, which the Court specifically identified as a distinct exception to the warrant requirement." *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010). McElrath's contention, of course, fails regardless of whether the law demanded probable cause or only reasonable suspicion before Riddle and his colleagues could search the Maserati.

6